## PERES v. CROCKER et al.

### S. F. No. 96; February 23, 1897.

#### 47 Pac. 928.

**Mortgage—Deed Absolute.—In an Action to Declare a Deed Absolute** in form a mortgage, a judgment for defendant cannot be set aside where, in confirmation of the presumption of the deed, there was evidence from the conduct of the grantor, and from his pecuniary condition at the time of its execution, and his declarations before and after, that the deed was in fact absolute.

**Evidence—Harmless Exclusion.—Where Plaintiff had Already Testified** as to what he told his grantee certain lands conveyed by him "ought" to have been worth at the time, exclusion of his estimate of their value was harmless.

APPEAL from Superior Court, Alameda County; W. E. Greene, Judge.

Action by Louis Peres against Mary Ives Crocker and others. Verdict for defendants. From an order denying a new trial plaintiff appeals. Affirmed.

N. Hamilton, Geo. H. Maxwell, R. M. F. Soto (Rodgers & Paterson of counsel) for appellant; Wilson & Wilson and A. L. Rhodes for respondents.

BRITT, C.—Plaintiff claims that certain deeds of land, absolute in form, by him executed to one Charles McLaughlin, whose interest defendants have acquired by devise, were intended by the parties thereto to operate virtually as a mortgage; and he prosecutes this action to obtain an accounting of the rents and profits of the land, and to redeem the same from the effect of the deeds, or compel a reconveyance of the residue after apportioning to defendants enough thereof at its present value to satisfy any indebtedness ascertained to be due from him on such accounting. The court found that the deeds were intended to be absolute, according to their purport, and the chief contention of plaintiff on appeal is that this conclusion was not justified by the evidence at the trial. While acknowledging the presumptions attending the findings, he yet insists that, "resolving every conflict of testimony in favor of the respondents, the whole

evidence taken together, in its legal effect, is counter to the
decision of the court, and justly demands a reversal of its
action." Invited by the apparent candor with which this
contention is urged on behalf of appellant, we have atten-
tively examined the voluminous statement of evidence
brought up in the record. We are thus informed that for
many years prior to May 12, 1881, an action entitled "Blum
v. Sunol and others" was pending in the courts of the state,
in which claim was laid by Blum to an undivided two-thirds
interest in and to the Rancho de los Vaqueros, more com-
monly called in the record here the "Basco Ranch," con-
taining about seventeen thousand seven hundred acres,
situated in Alameda and Contra Costa counties, and in the
possession of Louis Peres, the plaintiff in the present action.
The latter had undisputed title in one-third of said rancho,
and claimed to be owner of seventeen-eighteenths thereof as
purchaser under sundry defendants in Blum v. Sunol, in
whose name he defended that suit. In 1879 judgment was
rendered in Blum v. Sunol in Blum's favor. Subsequently
an order was made granting a new trial. Blum appealed
from such order, and his appeal was pending in the supreme
court on said May 12, 1881. Peres' interest in the rancho
was then encumbered by two mortgages—the first in favor
of one Dupuy for the principal sum of $70,000, the second
in favor of one Arsiniega for $10,000; both mortgage debts
being then due, and together amounting, with accrued in-
terest, to above $95,000. These mortgages were in course
of foreclosure in a suit against Peres then recently insti-
tuted, and a contract had been made between said Dupuy
and Blum for an adjustment of their conflicting interests
when by means of the foreclosure the title of Peres should
be extinguished. Peres was also under contract with his at-
torneys in Blum v. Sunol to give them one thousand acres
of the rancho as their fee contingent upon success in that
litigation. At the same time he owned free of any encum-
brance a tract of eight hundred and eighty acres in the near
vicinity of the rancho. Such smaller tract was of the value
of $4,400, and his seventeen-eighteenths of the rancho was
worth, had the title been clear, say $170,000. In this posture
of his affairs Peres executed to McLaughlin, on said May
12, 1881, the deeds mentioned at the outset of this opinion;
one purporting to be a grant, bargain and sale of the Basco

rancho, the other of said tract of eight hundred and eighty acres. McLaughlin at once took possession of the lands, paid off the said mortgages, and assumed the defense of Blum v. Sunol, himself or his successors in estate paying as expenses of that action about $17,000, exclusive of attorneys' fees. He died December 13, 1883, and his wife, Kate D. McLaughlin, who became his executrix, was sole devisee under his last will. She died on March 16, 1888, leaving a will whereby she devised her whole estate to the defendants in this action. The order granting a new trial in Blum v. Sunol was affirmed (63 Cal. 341). The second trial, had in 1884, resulted adversely to Blum. He again appealed, but in July, 1889, a compromise was effected whereby, in consideration of $8,500 paid by the executors of Mrs. McLaughlin, he released his claims to the rancho. Peres began the present action, July 9, 1890. The lands involved were then worth some $350,000.

Peres is the only surviving person professing to have actual knowledge of the terms of the oral agreement between himself and McLaughlin which led to the deeds in question. His testimony at the trial was, in effect, that McLaughlin agreed to treat the deeds as a mortgage, and to reconvey the land to Peres when the Blum suit should be won and Peres had repaid him "in money or in land" for his advances to discharge the mortgages and resist the suit of Blum, with interest; also to account for the rents and profits received meanwhile. As tending to corroborate the statements of Peres, we note that the tract of wholly unencumbered land was included in the conveyance; that the land was worth (with clear title) nearly twice the sum necessary to pay off the mortgages of Dupuy and Arsiniega, and besides yielded under the McLaughlin management a gross return in rents, etc., of about $14,000 per year; that Peres rendered some assistance in procuring testimony for the second trial of the Blum case; also certain evidence of parol declarations by McLaughlin in disparagement of his apparent title. It was testified that he stated to one witness: "It [the rancho] is not mine; if Peres wants it back, I expect to give it to him"; that he took "the fight off Peres' hands to beat Blum"; to another, that he had taken the deeds as security for money advanced to pay off two mortgages, and for money "that I may give him in the future to help him out

in his lawsuit''; and to a third, that he had loaned some money on the rancho. Appellant lays stress also on a promise made to him by McLaughlin that in case of his success in the litigation he would be generous or liberal to him (Peres). It seems to us, however, that this matter has very equivocal significance in the case.

But the court below was of opinion that the lands were conveyed to McLaughlin in consideration of his engaging to discharge the debts of Peres secured by said mortgages, and that he contracted no other obligation to Peres; and tending to uphold this finding there was evidence, besides the matters already stated, that Peres was without money to pay off the mortgages, and expected besides that the future litigation with Blum would necessitate large expense; that when Dupuy insisted on payment of his mortgage Peres threatened to settle with Blum, and allow Dupuy to take what would be left; that when Dupuy forestalled such action, and himself made an alliance with Blum and began suit for foreclosure, both Peres and his counsel in the case of Blum v. Sunol were greatly perturbed, and considered the situation desperate; that the transaction with McLaughlin occurred in this emergency; that the value of Peres' undisputed interest in the land was then far below the sum McLaughlin was required to pay for the release of the existing mortgages, while for any purpose of raising money the value of that part claimed by Blum was greatly impaired; that, according to Peres' own statement, no rate of interest to be paid by him to McLaughlin was mentioned between them; that Mr. E. J. Pringle, a gentleman of character and repute as the parties agree, who for many years had been attorney and counsel for Peres, and under whose direction the deed of the rancho to McLaughlin was drawn, had, as he testified, no intimation from Peres that the deed was to serve as a mortgage, but believed it to be absolute, and on that assumption thenceforward conducted the litigation with Blum in the interest of McLaughlin (as he had done previously for Peres), at length compromising the suit without consultation with or objection from Peres; that Peres accepted a lease of part of the rancho from McLaughlin, and paid rent therefor, afterward assigning his lease with McLaughlin's consent and removing from the land; that he made no arrangement for payment of taxes; these were paid

by McLaughlin and his successors, to whom, after 1881, the land was assessed; that Peres never sought an inspection of the accounts of the business of the rancho, nor after the execution of the deeds had or claimed any part in its management. In 1885 Peres owed the executrix $700 for rents, and a larger sum for cattle he had bought of McLaughlin. The second trial of Blum v. Sunol had then been had, and Peres preferred a request for consideration at the hands of the executrix because of her deceased husband's promise to be liberal with him if that suit should be won. She refused, and required payment of his said account for rents and cattle, and thereupon to settle the same he transferred to her a certificate of purchase of one hundred and twenty acres of state land adjoining the rancho. There was, besides, the testimony of several witnesses to divers statements of Peres inconsistent with the theory that he yet retained interest in the title; in substance, that his mortgages became due and he could not hold his land any longer, that he had sold it out to McLaughlin, that McLaughlin was the owner, had got it all, etc. We have endeavored to exhibit only more prominent features of the evidence, omitting matter touching mainly the credit of witnesses, and much besides which may have influenced the court below.

Counsel differ little as to the law of the case. That the evidence to sustain such an action must be cogent and clear has been often remarked. Thus it has been said that "the evidence ought to be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage, otherwise the intention appearing on the face of the deed ought to prevail": Henley v. Hotaling, 41 Cal. 27. "Unless the evidence is such as to leave in the mind of the trial judge a clear and satisfactory conviction that the instrument which in form is a deed was intended by all the parties thereto as a mortgage, the finding should be against the plaintiff": Mahoney v. Bostwick, 96 Cal. 58, 31 Am. St. Rep. 175, 30 Pac. 1020. So, Ahern v. McCarthy, 107 Cal. 383, 40 Pac. 482; Cline v. Robbins, 112 Cal. 584, 44 Pac. 1023, and numerous other cases. The trial court is the appropriate tribunal to weigh the evidence, and determine whether it is convincing and satisfactory in the sense of these cases, and its conclusion must be accepted on appeal unless obviously to the view of this court its deductions have no adequate support. In the present instance it

cannot be discerned that the findings are without such support. In confirmation of the presumption attaching to the deeds themselves, we think the court might conclude upon the evidence, without straining the inference, that the conduct of Peres from and after the execution of the deeds was much more consistent with the character of a vendor, having some vague expectation of possible benefit in case success attended the speculation on which his grantee had purchased the estate, than of a mortgagor expecting to be reinstated in the rights and dominion he had temporarily resigned to a mortgagee; while, if adequate motive for the conveyance was essential to be found, it might be discovered in the difficulties of Peres' situation and the contingency which confronted him, that a sale of his property under foreclosure, in the embarrassed condition of his title, would not raise funds sufficient to pay the debts secured on the same.

Peres, called as a witness on his own behalf, was asked by his counsel, "What did you estimate to be the value of those lands at the time of your negotiation with McLaughlin for this money?" The court sustained an objection to the question, and it is insisted that here was error. If it be conceded that the evidence sought by the question was within the rule which allows the motive, belief or intent of a person to be testified by himself directly, and was therefore legally competent, yet we think its rejection could not have prejudiced the plaintiff. He had already testified that he told McLaughlin he had sixteen thousand five hundred or sixteen thousand six hundred acres in the rancho, and it "ought to be worth eighteen or twenty dollars an acre"; also that he would not sell it to him for less than $350,000. Subsequently it was stipulated between counsel that the value of the rancho at the time in question was $170,000, this having reference, it seems, to the seventeen-eighteenths thereof owned by Peres. Further, to sustain plaintiff's case, it was necessary to show that not only himself, but McLaughlin also, considered or was bound to consider the transaction as a mortgage and not a sale; and no estimate of the value held in the mind of Peres could shed light on the intent of McLaughlin, except that which was communicated to the latter. It is therefore manifest that the result could not have been affected by any answer to the question asked of the witness, and the action of

the court excluding it worked no injury. The order denying plaintiff's motion for a new trial should be affirmed.

We concur: Belcher, C; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order denying plaintiff's motion for a new trial is affirmed.